107 F.3d 4
 79 A.F.T.R.2d 97-1089
 NOTICE: THIS SUMMARY ORDER MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY, BUT MAY BE CALLED TO THE ATTENTION OF THE COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA. SEE SECOND CIRCUIT RULE 0.23.
UNITED STATES of America, Appellee,
v.
Joseph FABIAN, Defendant-Appellant.
 No. 96-1584.
 United States Court of Appeals, Second Circuit.
 Feb. 12, 1997.
 
 1
 APPEARING FOR APPELLANT: Lawrence S. Lustberg, Crummy Del Deo, Dolan, Griffinger & Vecchione, Newark, N.J.
 
 
 2
 APPEARING FOR APPELLEE: Martin E. Coffey, Assistant United States Attorney for the Eastern District of New York, Brooklyn, N.Y.
 
 
 3
 Present GRAAFEILAND, LEVAL, Circuit Judges, SQUATRITO, District Judge.[1]
 
 
 4
 Defendant Joseph Fabian challenges the judgment of the court below imposing a sentence of sixteen months imprisonment and a $20,000 fine. Fabian contends that the sentence must be vacated because the district court refused to entertain his arguments regarding the appropriate amount of tax loss for purposes of calculating the Sentencing Guideline range. He argues that this refusal violated Federal Rule of Criminal Procedure 32(c)(1) and § 6A1.3 of the Sentencing Guidelines, which permit defendants to dispute relevant sentencing factors and require district courts to resolve such disputes prior to sentencing.
 
 
 5
 On March 28, 1995, defendant Joseph Fabian pleaded guilty to one count of filing a false income tax return in violation of 26 U.S.C. § 7206(1). Part of the falsity of Fabian's tax returns resulted from his practice of realizing profits from stock market activity in nominee brokerage accounts in the names of his mother and sister. Fabian failed to report the amount of income derived from the brokerage accounts on his own income tax reports, although his sister and mother did report the income on their own income tax reports. Fabian's guilty plea did not include an agreement about the amount of tax loss to the government, a disputed issue which was left to be resolved at sentencing.
 
 
 6
 Fabian's PSI stated that the relevant tax loss was $25,683, the amount that Fabian would have paid in income tax if he had rightfully declared the income from transactions in the nominee accounts. Fabian objected to this calculation, however, because his mother and sister had declared this income on their own income tax returns. Since they were in higher tax brackets, he argued, the government's tax loss was actually zero.
 
 
 7
 On July 1, 1996, the district court held a Fatico hearing, see U.S.S.G. § 6A1.3, to allow the parties to adduce evidence regarding the disputed sentencing issues. At the Fatico hearing, the government conceded that the PSI was mistaken. The government claimed to have sustained a tax loss nonetheless by virtue of Fabian's failure to report and pay taxes on income of at least $109,000--the amount used to purchase money orders deposited in the brokerage accounts.
 
 
 8
 Fabian disputed that the $109,000 constituted unreported income. He argued that his ability to purchase $109,000 in money orders despite his relatively low salary during the years in question was the result of parental largesse. He submitted a sworn statement from his father detailing various gifts made to Fabian and asserting that he had given a total of well over $100,000.
 
 
 9
 After extended discussion with the government as to the source of the tax loss in the case, the district court cut short the first Fatico hearing so that the government could recalculate the loss under a theory that the loss was due to Fabian's failure to pay tax on the $109,000 of income used to purchase money orders, rather than failure to pay tax on the profits from investing the $109,000 in nominee brokerage accounts.
 
 
 10
 The government submitted a memorandum regarding the amount of tax loss, in which it argued that the increase in Fabian's net worth could be explained only by receipt of at least $109,000 in unreported income in the years in question. This conclusion rested on the discrepancy between Fabian's increasing net worth and his reported income and expenditures. Although the government's analysis of Fabian's net worth suggested as much as $450,000 in unreported income during the relevant period, the government asserted that it was calculating a tax loss of $25,683 on the basis of $109,000 in unreported income--the amount of the money orders deposited in nominee accounts. It also disputed the veracity of Fabian's father's affidavit regarding his gift-giving, offering evidence that some of the bank withdrawals Fabian's father had characterized as gifts were either subject to stop orders or immediately redeposited into other accounts.
 
 
 11
 Fabian, in return, submitted an additional affidavit in which his father alleged that he had given Fabian over $100,000 in gifts and disputed the government's evidence. In addition, Fabian submitted a chart purporting to demonstrate his frugality and the low level of his expenditures.
 
 
 12
 The district court held a second Fatico hearing on August 26, 1996. At this hearing, Fabian attempted to argue that some of the increases in his net worth could be explained by his frugal lifestyle, in that his real expenses were substantially lower than what the government had assumed in its net worth comparison. The district court refused to allow Fabian to offer this explanation. When counsel tried repeatedly to argue this theory, the district judge responded to the effect that he was accepting the government's figures on tax loss and would not permit the defendant to dispute that figure except by rejecting the guilty plea and having the question of guilt tried. Counsel protested that "it doesn't have to be at a trial"; the court responded that "[i]t's not going to be any other way."
 
 
 13
 Under Federal Rule of Criminal Procedure 32(c)(1), a sentencing court "must afford counsel for the defendant and for the Government an opportunity to comment on the probation officer's determinations and on other matters relating to the appropriate sentence.... For each matter controverted, the court must make either a finding on the allegation or a determination that no finding is necessary because the controverted matter will not be taken into account in, or will not affect, sentencing." The procedures outlined in Rule 32(c) "not only protect[ ] the defendant's right to due process," but "also help[ ] clarify the record on appeal." United States v. Garcia, 900 F.2d 571, 574 (2d Cir.), cert. denied, 498 U.S. 862, 111 S.Ct. 169 (1990). This court has repeatedly emphasized the importance of complying with Rule 32(c) by resolving disputed issues explicitly on the record. See, e.g., United States v. Maturo, 982 F.2d 57, 62 (2d Cir.1992), cert. denied, 508 U.S. 980, 113 S.Ct. 2982 (1993); United States v. Feigenbaum, 962 F.2d 230, 232 (2d Cir.1992); United States v. Williamsburg Check Cashing Corp., 905 F.2d 25, 29 (2d Cir.), cert. denied, 498 U.S. 862, 111 S.Ct. 169 (1990).
 
 
 14
 Similarly, U.S.S.G. § 6A1.3(a) mandates that "[w]hen any factor important to the sentencing determination is reasonably in dispute, the parties shall be given an adequate opportunity to present information to the court regarding that factor," after which the court shall "resolve disputed sentencing factors in accordance with Rule 32(a)(1) ..., notify the parties of its tentative findings and provide a reasonable opportunity for the submission of oral or written objections before imposition of sentence."
 
 
 15
 The defendant was entitled to argue to the sentencing judge that the tax loss, which affects the severity of the sentence under the guidelines, was less than the government contended. The amount of the tax loss was irrelevant to the defendant's guilt, which the defendant had in any event conceded by the plea of guilty. The court's refusal to consider the defendant's arguments in relation to the sentence and its insistence that those arguments could be raised only at trial (which would require the defendant to sacrifice the benefits under the guidelines of having pleaded guilty) violated the dictates of Rule 32(c)(1) and § 6A1.3. Accordingly, the judgment must be vacated. The matter is remanded for resentencing. At resentencing, the defendant may advance whatever reasons or contentions he wishes affecting the proper level of sentence and is entitled to have findings made on those contentions.
 
 
 16
 Fabian also claims that the district court erred in finding that he was subject to a two-level increase pursuant to U.S.S.G. § 2T1.3 for the use of "sophisticated means," and that any tax loss to the government due to unreported income would not constitute related conduct for purposes of calculating his guideline range under § 2T1.3. We have considered these arguments, and find them without merit.
 
 
 
 [1]
 The Honorable Dominic J. Squatrito, United States District Judge, District of Connecticut, sitting by designation